UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

MARQUIS COLLIER,

                               Plaintiff,

        v.

CITY OF MOUNT VERNON, *et al.*,

                               Defendants.

---

No. 19-CV-5230 (KMK)

<u>OPINION & ORDER</u>

<u>Appearances:</u>

Marquis Collier
Adelanto, CA
*Pro Se Plaintiff*

Andrew C. Quinn, Esq.
Marykate Acquisto, Esq.
Steven J. Bushnell, Esq.
The Quinn Law Firm, PLLC
White Plains, NY
*Counsel for Defendants*

KENNETH M. KARAS, District Judge:

Marquis Collier ("Plaintiff"), proceeding pro se, brings this Action under 42 U.S.C.

§ 1983 ("§ 1983"), against Mount Vernon Police Department ("MVPD") Detective Camilo R.

Antonini ("Antonini"), MVPD Police Officer Robert G. Puff ("Puff"), MVPD Police Officer

Patrick King ("King"; with the other individual defendants, the "Officer Defendants"), and the

City of Mount Vernon, (the "City"; collectively, "Defendants").  (*See generally* Compl. (Dkt.

No. 2).)  Specifically, Plaintiff alleges that he was falsely arrested and imprisoned—and

subjected to malicious prosecution—following a car stop effectuated by the Officer Defendants

in January 2017. (*See id.* at 4.)[1]  Plaintiff also asserts that the City is liable for the alleged

violations of his constitutional rights because it "is deliberately indifferent to the rights of [its]

residents . . . by failing to train and supervise its [p]olice officers as to probable cause

requirements[] prior to making an arrest."  (*See id.* at 4–5.)  Before the Court is Defendants'

Motion for Summary Judgment (the "Motion").  (*See* Not. of Mot. (Dkt. No. 48).)  For the

reasons explained below, Defendants' Motion is granted.

## I.  Background

### A.  Factual Background

The following facts are taken from the Defendants' statement pursuant to Local Civil

Rule 56.1.  (*See* Defs.' Rule 56.1 Statement ("Defs.' 56.1") (Dkt. No. 50).)[2]  Additionally, where

necessary, the Court cites directly to the admissible evidence submitted by Defendants.

---

[1] Unless otherwise noted, the Court refers to the ECF-stamped page number in the upper righthand corner of each page cited herein.

[2] Local Civil Rule 56.1(a) requires the moving party to submit a "short and concise statement, in numbered paragraphs, of the material facts as to which the moving party contends there is no genuine issue to be tried."  Local Civ. R. 56.1(a).  The nonmoving party, in turn, must submit "a correspondingly numbered paragraph responding to each numbered paragraph in the statement of the moving party, and if necessary, additional paragraphs containing a separate, short[,] and concise statement of additional material facts as to which it is contended that there exists a genuine issue to be tried."  *Id*. 56.1(b).  "If the opposing party . . . fails to controvert a fact set forth in the movant's Rule 56.1 statement, that fact will be deemed admitted pursuant to the local rule."  *Baity v. Kralik*, 51 F. Supp. 3d 414, 418 (S.D.N.Y. 2014) (citation and quotation marks omitted); *see also T.Y. v. N.Y.C. Dep't of Educ.*, 584 F.3d 412, 418 (2d Cir. 2009) (same).  "A pro se litigant is not excused from this rule."  *Brandever v. Port Imperial Ferry Corp.*, No. 13–CV–2813, 2014 WL 1053774, at *3 (S.D.N.Y. Mar. 13, 2014) (italics omitted).

Here, Defendants filed and served their statement pursuant to Rule 56.1, (*see* Defs.' 56.1), and sent the required Local Rule 56.2 Notice to Plaintiff, (*see* Not. to Pro Se Litigant (Dkt. No. 52)).  However, Plaintiff failed to submit a response to Defendants' 56.1 Statement of Facts, or otherwise respond to Defendants' Motion.  (*See generally* Dkt.)  Accordingly, the Court may conclude that the facts in Defendants' 56.1 Statement are uncontested and admissible.  *See Brandever*, 2014 WL 1053774, at *3 (concluding that because the pro se plaintiff did not submit a Rule 56.1 statement in response to the defendant's statement of facts, "there [were] no material

The facts are recounted "in the light most favorable to" Plaintiff, the non-movant.

*Torcivia v. Suffolk County*, 17 F.4th 342, 354 (2d Cir. 2021). The facts as described below are

undisputed unless otherwise noted.

As an initial matter, it is undisputed that the Officer Defendants were members of the

MVPD when the events at issue took place. (*See generally* Compl.; *see also* Defs.' 56.1 ¶¶ 7,

12, 35.)

issues of fact"); *Anand v. N.Y. State Div. of Hous. & Cmty. Renewal*, No. 11–CV–9616, 2013 WL 4757837, at *7 (S.D.N.Y. Aug. 29, 2013) (same).

Nevertheless, in light of the "special solicitude" afforded to pro se litigants "when confronted with motions for summary judgment," *Graham v. Lewinski*, 848 F.2d 342, 344 (2d Cir. 1988), the Court has "in its discretion opt[ed] to conduct an assiduous review of the [entire] record" when deciding the instant Motion, *Smolen v. Brown*, No. 18-CV-7621, 2023 WL 6199094, at *1 n.1 (S.D.N.Y. Sept. 22, 2023) (citation omitted); *accord Bernel v. Korobkova*, No. 21-CV-5106, 2023 WL 6146600, at *1 n.2 (S.D.N.Y. Sept. 19, 2023); *Gunn v. Ayala*, No. 20-CV-840, 2023 WL 2664342, at *1 n.1 (S.D.N.Y. Mar. 28, 2023); *see also Houston v. Teamsters Local 210, Affiliated Health & Ins. Fund-Vacation Fringe Ben. Fund*, 27 F. Supp. 3d 346, 349 (E.D.N.Y. 2014) ("Although [the] plaintiffs did not file a Rule 56.1 statement, the Court has independently reviewed the record to ensure that there is uncontroverted evidence to support the paragraphs referenced in [the] defendants' Rule 56.1."); *Pagan v. Corr. Med. Servs.*, No. 11-CV-1357, 2013 WL 5425587, at *2 (S.D.N.Y. Sept. 27, 2013) (explaining that "[t]he [c]ourt ha[d] considered the [motions for summary judgment] in light of the entirety of the record to afford [the pro se] [p]laintiff the special solicitude to which he [was] entitled" where the plaintiff failed to submit a Rule 56.1 response); *Cherry v. Byram Hills Cent. Sch. Dist.*, No. 11-CV-3872, 2013 WL 2922483, at *1 (S.D.N.Y. June 14, 2013) ("[W]here a pro se plaintiff fails to submit a proper . . . Rule 56.1 statement in opposition to a summary judgment motion, the [c]ourt retains some discretion to consider the substance of the plaintiff's arguments, where actually supported by evidentiary submissions." (italics omitted) (quotation marks omitted)).

### 1.  Events of January 6, 2017[3]

#### a.  The Lyft Ride

On January 6, 2017, Plaintiff and two others used the ridesharing service Lyft in order to go shopping.  (*See* Pl.'s Dep. Tr. 12:25–13:20.)  Ultimately, the Lyft ride ended in Mount Vernon, New York.  (*See id.* at 13:5–14.)

After Plaintiff's Lyft ride ended, the Lyft driver approached non-party members of the MVPD, including Detective Wendell Griffin ("Griffin"), and informed them that three men had exited his car without paying for their ride.  (*See* Defs.' 56.1 ¶ 5; *see also* Acquisto Decl. Ex. C ¶ 5 (affidavit of MVPD Detective Griffin) (Dkt. No. 49-3); *id.* Ex. D at 1 (Detective's Supplemental Report prepared by Griffin) (Dkt. No. 49-4).)  Specifically, the Lyft driver alleged that the three men told him that they were going into a local store to get money from an ATM, but that they never returned to pay him.  (*See* Defs.' 56.1 ¶ 6; *see also* Acquisto Decl. Ex. C ¶ 6; *id.* Ex. D at 1.)

In light of this report, Griffin and King later went to the store that the Lyft driver identified in order to speak with the manager.  (*See* Defs.' 56.1 ¶ 7.)  Once there, the store's manager allowed them to review the store's surveillance footage from earlier that day.  (*See id.*; *see also* Acquisto Decl. Ex. C ¶ 7; *id.* Ex. D at 1.)  Upon reviewing that footage, Griffin saw that Plaintiff—whom he recognized—and two other men entered the store at around 10:58 a.m. and

---

[3] Although the Complaint alleges that the events at issue took place on January 5, 2017, (*see* Compl. 4), Plaintiff does not appear to dispute that they in fact took place on January 6, 2017, (*see* Decl. of Marykate Acquisto, Esq. ("Acquisto Decl.") Ex. B ("Pl.'s Dep. Tr.") at 12:20–24, 44:6–13 (Dkt. No. 49-2)).

The Court notes that citations to Plaintiff's deposition transcript cite the internal page and line numbers therein.

then exited the store at around 10:59 a.m.  (*See* Defs.' 56.1 ¶ 8; *see also* Acquisto Decl. Ex. C ¶ 8; *id.* Ex. D at 1.)

Thereafter, the Lyft driver was shown a photo array, which contained a photograph of Plaintiff.  (*See* Defs.' 56.1 ¶ 9; *see also* Acquisto Decl. Ex. E at 1 (MVPD Detective's Supplemental Report) (Dkt. No. 49-5).)  When prompted to identify the men involved in the Lyft incident, the Lyft driver selected the photograph of Plaintiff, and he also provided a victim statement that, in sum and substance, indicated that he: picked Plaintiff up in Yonkers; picked up the two other men from two other locations; made several stops for the three men; and that the three men exited his vehicle in Mount Vernon without paying the $120 owed for the Lyft driver's services.  (*See* Defs.' 56.1 ¶ 9; *see also* Acquisto Decl. Ex. E at 1.)

### b.  The Car Stop

Later that same day, at around 5:15 p.m., Puff and King were patrolling Mount Vernon when they drove past a red Volkswagen Jetta with Connecticut license plates (the "Jetta").  (*See* Defs.' 56.1 ¶ 12; *see also* Acquisto Decl. Ex. F ("Puff Aff.") ¶¶ 4–5 (Dkt. No. 49-6); *id.* Ex. G at 1 (MVPD Incident Report) (Dkt. No. 49-7); *id.* Ex. H ("King Aff.") ¶¶ 4–5 (Dkt. No. 49-8).) Puff, who was driving the patrol vehicle, was aware that the Jetta was wanted in connection with a recent homicide, and that its driver—whom he recognized—had a suspended driver's permit, so he made a U-turn in order to pull the Jetta over.  (*See* Defs.' 56.1 ¶ 14; *see also* Puff Aff. ¶¶ 5–7; Acquisto Decl. Ex. G at 1; Pl.'s Dep. Tr. at 21:7–16.)[4]  After Puff made a U-turn, the Jetta's driver made a right turn without using his turn signal.  (*See* Defs.' 56.1 ¶ 15; *see also* Puff Aff. ¶ 8; Acquisto Decl. Ex. G at 1.)

---

[4] With respect to the Jetta's driver, Plaintiff testified that he has "bad eyes" and wears glasses.  (Pl.'s Dep. Tr. at 21:7–22:2.)

At this time, Plaintiff, who was one of four individuals in the Jetta, was seated in the Jetta's rear middle seat.  (*See* Defs.' 56.1 ¶ 13; Pl.'s Dep. Tr. at 19:7–11.)  After the Jetta's driver indicated to Plaintiff that MVPD officers may have just made a U-turn behind them, Plaintiff told the driver to let him out of the car "before [the police] try to do any funny stuff and pull you over."  (Pl's Dep. Tr. at 21:7–19.)  As the Jetta's driver pulled over to let Plaintiff out, Puff pulled over directly in front of the Jetta to prevent him from pulling away.  (*See* Acquisto Decl. Ex. G at 1; *see also* Pl.'s Dep. Tr. at 21:20–22 (Plaintiff's testimony that "[a]s [the Jetta's driver] went to pull over, [police officers] pulled in front of the [Jetta]").)[5]  Puff and King then approached the Jetta, identifying themselves as police officers.  (*See* Defs.' 56.1 ¶ 17; Acquisto Decl. Ex. G at 1; Puff Aff. ¶ 9.)[6]

Upon approaching the Jetta, Puff observed the occupants to be nervous and making furtive movements with their hands, so he ordered them to keep their hands where he could see them.  (*See* Defs.' 56.1 ¶ 18; Puff Aff. ¶ 10; Acquisto Decl. Ex. G at 1–2; *see also* Pl.'s Dep. Tr. at 26:19–22.)  Puff and King recognized Plaintiff, recalled that he was wanted in connection with the Lyft incident earlier that day, and arrested him for theft of services.  (*See* Defs.' 56.1 ¶¶ 10,

---

[5] Plaintiff does not contest the validity of the January 6, 2017 car stop, (*see generally* Compl.; Pl.'s Dep. Tr.), nor could he, because, "[w]hen an officer observes a traffic offense—however minor—[the officer] has probable cause to stop the driver of the vehicle."  *Chambers v. Lombardi*, No. 17-CV-7557, 2020 WL 2097558, at *6 (S.D.N.Y. May 1, 2020) (quoting *United States v. Scopo*, 19 F.3d 777, 782 (2d Cir. 1994)).

[6] Plaintiff asserts that Puff and King—whom he could not specifically identify during his deposition—approached the Jetta with their "guns out."  (Pl.'s Dep. Tr. at 21:20–22; *see also id.* at 24:7–16 (Plaintiff's testimony that he believed one of the initial MVPD officers on the scene was King).)

With respect to Antonini, Plaintiff testified during his deposition that he had arrived on the scene after the initial stop "as backup."  (Pl.'s Dep. Tr. 45:23–46:18.)

19; Puff Aff. ¶¶ 11–13; Acquisto Decl. Ex. G at 2; King Aff. ¶¶ 6–8.)[7]  Plaintiff was then transported to MVPD's headquarters.  (*See* Defs.' 56.1 ¶ 20; Puff Aff. ¶ 13; King Aff. ¶ 8.)

Following Plaintiff's and the Jetta's other occupants' arrests, the Jetta was impounded and subjected to an inventory search.  (*See* Acquisto Decl. Ex. C ¶ 9.)  Griffin conducted the inventory search and, during his search, he observed a bulge in the rear pocket of the Jetta's front passenger seat that resembled a handgun.  (*Id.* ¶ 10; *see also* Defs.' 56.1 ¶ 21; Acquisto Decl. Ex. K at 1 (Detective's Supplemental Report prepared by Griffin) (Dkt. No. 49-11).)  At that point, the inventory search was paused so that MVPD officers could obtain a search warrant.  (*See* Defs.' 56.1 ¶ 22; Acquisto Decl. Ex. C ¶ 11; *id.* Ex. K at 1.)  Although a loaded handgun was ultimately recovered from the Jetta, none of the Jetta's occupants—including Plaintiff—claimed ownership of that gun.  (*See* Defs.' 56.1 ¶¶ 22–23; Acquisto Decl. Ex. G at 2–3; *id.* Ex. L at 1 (Detective's Supplemental Report) (Dkt. No. 49-12); Puff Aff. ¶ 16; King Aff. ¶¶ 10–11.)

### 2.  Subsequent Criminal Proceedings

Based upon the events of January 6, 2017, Puff signed a felony complaint charging Plaintiff—as well as the other occupants of the Jetta—with Criminal Possession of a Weapon in the Second Degree in violation of N.Y. Penal Law § 265.03.  (*See* Defs.' 56.1 ¶¶ 23–24; *see also* Acquisto Decl. Ex. M at 1 (January 6, 2017 felony complaint against Plaintiff and others) (Dkt.

---

[7] During his deposition, Plaintiff asserted that his January 6, 2017 arrest stemmed from a charge for criminal possession of a weapon, not the alleged theft of services.  (*See* Pl.'s Dep. Tr. at 15:4–14.)

The Court also notes that the other three individuals in the Jetta were arrested as well.  (*See* Puff Aff. ¶ 14.)

No. 49-13).)[8]  The following day, on January 7, 2017, Plaintiff appeared before the Mount

Vernon City Court and was then remanded into custody.  (*See* Defs.' 56.1 ¶ 25.)[9]

On January 9, 2017, Plaintiff again appeared before the Mount Vernon City Court.  (*Id.*

¶ 27.)  During that proceeding, Plaintiff, through counsel, pled not guilty to the charges against

him.  (*See id.*)  Plaintiff next appeared for a felony hearing on January 12, 2017, after which he

was again remanded into custody pending grand jury proceedings.  (*Id.* ¶ 29.)  Then, on February

23, 2017, a grand jury impaneled in Westchester County voted to dismiss the Criminal

Possession of a Weapon in the Second Degree charge against Plaintiff.  (*Id.* ¶ 30; *see also*

Acquisto Decl. Ex. S at 1 (grand jury dismissal) (Dkt. No.  49-19).)[10]

Although a grand jury voted to dismiss the charge against him, Plaintiff was required to

remain in jail because he was on a parole hold.  (Defs.' 56.1 ¶ 32.)  During that time, Plaintiff

completed a program meant to reduce violence and was thereafter released from custody.  (*Id.*

¶ 33.)

On November 17, 2017, another individual who had been in the Jetta pled guilty to a

Criminal Possession of a Weapon in the Second Degree charge relating to the firearm recovered

---

[8] King signed a superseding felony complaint against Plaintiff on January 9, 2017.  (*See* Defs.' 56.1 ¶ 28; *see also* Acquisto Decl. Ex. Q at 1 (January 9, 2017 superseding felony complaint against Plaintiff) (Dkt. No. 49-17).)  No new charges were brought therein.  (*See* Defs.' 56.1 ¶ 28; Acquisto Decl. Ex. Q at 1.)

[9] As Plaintiff explained during his deposition, he was not able to be released on his own recognizance because he was on parole in connection with a prior conviction at that time, such that he was ultimately placed on a parole hold.  (*See* Pl.'s Dep. Tr. at 35:7–19.)

[10] In the interim, Plaintiff pled guilty to a charge of Theft of Services in connection with the Lyft driver's allegations in violation of N.Y. Penal Law § 165.13(3) on February 7, 2017.  (*See* Defs.' 56.1 ¶ 11; Acquisto Decl. Ex. J at 1 (Plaintiff's Certificate of Disposition) (Dkt. No. 49-10).)  Plaintiff received a sentence of time served.  (Defs.' 56.1 ¶ 11; Acquisto Decl. Ex. J at 1.)

on January 6, 2017.  (*Id.* ¶ 34; Acquisto Decl. Ex. T at 1 (sentence and commitment form) (Dkt. No, 49-20).)

### B.  Procedural History

Plaintiff's Complaint was docketed on May 31, 2019.  (*See generally* Compl.) Defendants filed an Answer on July 26, 2019.  (*See* Answer (Dkt. No. 10).)[11]

Following discovery, Defendants filed a pre-motion letter seeking leave to file the instant Motion.  (*See* Letter from Marykate Acquisto, Esq. to Court (Aug. 28, 2023) (Dkt. No. 41).) Plaintiff did not respond to Defendants' letter, (*see generally* Dkt.), and on September 12, 2023, the Court granted Defendants leave to file the Motion and adopted a briefing schedule, (*see* Dkt. No. 42).

Pursuant to that briefing schedule, Defendants filed their Motion and accompanying papers on October 12, 2023.  (*See* Not. of Mot.; Acquisto Decl. (Dkt. No. 49); Defs.' 56.1; Defs.' Mem. of Law in Supp. of Mot. ("Defs.' Mem.") (Dkt. No. 51); Not. to Pro Se Litigant.)  Along with their Motion papers, Defendants filed a Certificate of Service, affirming that they had served Plaintiff those papers, among other things, via certified mail.  (*See* Cert. of Service (Dkt. No. 53).)  Nevertheless, Plaintiff did not respond to Defendants' Motion.  (*See generally* Dkt.)

---

[11] Because Plaintiff had not prosecuted his case from June 2, 2021 through April 8, 2022, the Court issued an Order to Show Cause on April 8, 2022, directing Plaintiff to show cause, by no later than April 29, 2022, as to why this case should not be dismissed without prejudice for failure to prosecute.  (*See* Order to Show Cause (Dkt. No. 24).)  The Clerk of Court mailed a copy of the Order to Show Cause to Plaintiff, (*see* Dkt. (entry for Apr. 11, 2022)), and on April 26, 2022, the mail was returned to the Clerk of Court, (*see* Dkt. (entry for Apr. 26, 2022)). The Court then issued an Order of Dismissal on May 6, 2022.  (*See* Order of Dismissal (Dkt. No. 25).)  However, after that Order was mailed to Plaintiff, it too was returned to the Clerk of Court. (*See* Dkt. (entry for June 2, 2022) (stating "Return To Sender Not Deliverable As Addressed Unable To Forward, RTS, NOT HERE").)  The Court thereafter re-opened this case.

On December 8, 2023, Defendants filed a Reply Declaration in further support of their Motion. (*See* Reply Decl. in Supp. of Mot. (Dkt. No. 54).)

## II.  Discussion

### A.  Standard of Review

Summary judgment is appropriate where the movant shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986) (same); *Truitt v. Salisbury Bank & Tr. Co.*, 52 F.4th 80, 85 (2d Cir. 2022) (same); *Cambridge Funding Source LLC v. Emco Oilfield Servs. LLC*, No. 22-CV-10741, 2023 WL 7405862, at *4 (S.D.N.Y. Nov. 9, 2023) (same).  "In deciding whether to award summary judgment, the court must construe the record evidence in the light most favorable to the non-moving party and draw all reasonable inferences in [his] favor."  *Torcivia*, 17 F.4th at 354; *see also Horror Inc. v. Miller*, 15 F.4th 232, 240 (2d Cir. 2021) (same).  "The movant 'bears the initial burden of showing that there is no genuine dispute as to a material fact.'"  *McKinney v. City of Middletown*, 49 F.4th 730, 738 (2d Cir. 2022) (quoting *Jaffer v. Hirji*, 887 F.3d 111, 114 (2d Cir. 2018)); *see also LaFontant v. Mid-Hudson Forensic Psychiatric Ctr.*, No. 18-CV-23, 2023 WL 6610764, at *7 (S.D.N.Y. Oct. 10, 2023) (same); *Red Pocket, Inc. v. Interactive Commc'ns Int'l, Inc.*, No. 17-CV-5670, 2020 WL 838279, at *4 (S.D.N.Y. Feb. 20, 2020) (same).

"However, when the burden of proof at trial would fall on the non[-]moving party, it ordinarily is sufficient for the movant to point to a lack of evidence to go to the trier of fact on an essential element of the non[-]movant's claim," in which case "the non[-]moving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment."  *CILP Assocs., L.P. v. Pricewaterhouse Coopers LLP*, 735 F.3d

114, 123 (2d Cir. 2013) (alteration adopted) (internal quotation marks and citation omitted); *see also U.S. Bank Nat'l Ass'n as Tr. for Reg. Holders of J.P. Morgan Chase Com. Mortg. Sec. Corp., Multifamily Mortg. Pass-Through Certificates, Series 2017-SB42 v. 160 Palisades Realty Partners LLC*, No. 20-CV-8089, 2022 WL 743928, at *3 (S.D.N.Y. Mar. 10, 2022) (same). Further, "[t]o survive a [summary judgment] motion . . . , [a non-movant] need[s] to create more than a 'metaphysical' possibility that his allegations were correct; he need[s] to 'come forward with specific facts showing that there is a genuine issue for trial,'" *Wrobel v. County of Erie*, 692 F.3d 22, 30 (2d Cir. 2012) (emphasis omitted) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986)); *see also Jennifer Fung-Schwartz, D.P.M, LLC v. Cerner Corp.*, No. 17-CV-233, 2023 WL 6646385, at *3 (S.D.N.Y. Oct. 12, 2023) (same), "and cannot rely on the mere allegations or denials contained in the pleadings," *Guardian Life Ins. Co. v. Gilmore*, 45 F. Supp. 3d 310, 322 (S.D.N.Y. 2014) (quotation marks omitted); *see also Kollias v. Univ. of Rochester*, No. 18-CV-6566, 2023 WL 5608868, at *4 (W.D.N.Y. Aug. 30, 2023) ("When a motion for summary judgment is properly supported by documents or other evidentiary materials, the party opposing summary judgment may not merely rest on the allegations or denials of his pleading." (quoting *Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009))).

"On a motion for summary judgment, a fact is material if it might affect the outcome of the suit under the governing law." *Seward v. Antonini*, No. 20-CV-9251, 2023 WL 6387180, at *12 (S.D.N.Y. Sept. 29, 2023) (quoting *Royal Crown Day Care LLC v. Dep't of Health & Mental Hygiene*, 746 F.3d 538, 544 (2d Cir. 2014)). "At this stage, 'the role of the court is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried.'" *U.S. Sec. & Exch. Comm'n v. Amah*, No. 21-CV-6694, 2023 WL 6386956, at *8 (S.D.N.Y. Sept.

28, 2023) (alteration adopted) (quoting *Brod v. Omya, Inc.*, 653 F.3d 156, 164 (2d Cir. 2011)).

Therefore, "a court's goal should be 'to isolate and dispose of factually unsupported claims.'"

*Sullivan v. Nat'l Express LLC*, No. 21-CV-5789, 2023 WL 6279255, at *8 (S.D.N.Y. Sept. 26,

2023) (quoting *Geneva Pharms. Tech. Corp. v. Barr Labs. Inc.*, 386 F.3d 485, 495 (2d Cir. 2004)

(quoting *Celotex Corp.*, 477 U.S. at 323–24)).

When ruling on a motion for summary judgment, a district court should "consider only

evidence that would be admissible at trial." *Latimer v. Annucci*, No. 21-CV-1275, 2023 WL

6795495, at *3 (S.D.N.Y. Oct. 13, 2023) (citing *Nora Beverages, Inc. v. Perrier Grp. of Am.,

Inc.,* 164 F.3d 736, 746 (2d Cir. 1998)). "'[W]here a party relies on affidavits or deposition

testimony to establish facts, the statements must be made on personal knowledge, set out facts

that would be admissible in evidence, and show that the affiant or declarant is competent to

testify on the matters stated.'" *Mozzochi v. Town of Glastonbury*, No. 21-CV-1159, 2023 WL

3303947, at *3 (D. Conn. May 8, 2023) (quoting *DiStiso v. Cook*, 691 F.3d 226, 230 (2d Cir.

2012) (quoting Fed. R. Civ. P.56(c)(4))); *see also E. Fishkill Fire Dist. v. Ferrara Fire

Apparatus, Inc.*, No. 20-CV-576, 2023 WL 6386821, at *11 (S.D.N.Y. Sept. 28, 2023) ("Rule 56

requires a motion for summary judgment to be supported with affidavits based on personal

knowledge . . . ." (internal citation omitted)); *Baity v. Kralik*, 51 F. Supp. 3d 414, 419 (S.D.N.Y.

2014) (disregarding "statements not based on [the] [p]laintiff's personal knowledge"); *Flaherty

v. Filardi*, No. 03-CV-2167, 2007 WL 163112, at *5 (S.D.N.Y. Jan. 24, 2007) ("The test for

admissibility is whether a reasonable trier of fact could believe the witness had personal

knowledge." (internal citation omitted)).

"As a general rule, 'district courts may not weigh evidence or assess the credibility of

witnesses at the summary judgment stage.'" *Parker v. Fantasia*, 425 F. Supp. 3d 171, 183

(S.D.N.Y. 2019) (quoting *Jeffreys v. City of New York*, 426 F.3d 549, 551 (2d Cir. 2005)); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986) (noting that at the summary judgment stage, the court is not to "weigh the evidence and determine the truth of the matter"); *Vital v. Interfaith Med. Ctr.*, 168 F.3d 615, 622 (2d Cir. 1999) ("Assessments of credibility and choices between conflicting versions of the events are matters for the jury, not for the court on summary judgment." (quotation marks omitted)).  Where the evidence presents "a question of 'he said, she said'" the court "cannot . . . take a side at the summary judgment stage."  *Fincher v. Depository Tr. & Clearing Corp.*, 604 F.3d 712, 726 (2d Cir. 2010); *see also Kassel v. City of Middletown*, 272 F. Supp. 3d 516, 535 (S.D.N.Y. 2017) (noting that "it is not the role of the [c]ourt at summary judgment to resolve [a] factual clash"); *Bale v. Nastasi*, 982 F. Supp. 2d 250, 258–59 (S.D.N.Y. 2013) (stating that "[w]here each side . . . tells a story that is at least plausible and would allow a jury to find in its favor, it is for the jury to make the credibility determinations and apportion liability, and not for the court").

However, although witness credibility is usually a question of fact for the jury, *Yu Zhang v. Sabrina USA Inc.*, No. 18-CV-12332, 2021 WL 1198932, at *3 (S.D.N.Y. Mar. 30, 2021), "[b]road, conclusory attacks on the credibility of a witness without more [are] insufficient to raise a genuine issue of material fact that would defeat a motion for summary judgment," *Sec. & Exch. Comm'n v. Airborne Wireless Network*, No. 21-CV-1772, 2023 WL 5938527, at *6 (S.D.N.Y. Sept. 12, 2023) (internal quotation marks and citation omitted); *see also Ezuma v. City Univ. of N.Y.*, 665 F. Supp. 2d 116, 128 (E.D.N.Y. 2009) ("If the moving party has made a properly supported motion for summary judgment, the plaintiff may not respond simply with general attacks upon the defendant's credibility." (alterations adopted) (internal citation omitted)).  Thus, "when opposing a motion for summary judgment, the non-moving party may

not respond simply with general attacks upon the declarant's credibility, but rather must identify affirmative evidence from which a jury could find that the non-moving party has carried its burden of proof." *Moritz v. Town of Warwick*, No. 15-CV-5424, 2017 WL 4785462, at *8 (S.D.N.Y. Oct. 19, 2017) (alterations adopted) (internal quotation marks and citation omitted); *see also Paul v. Postgraduate Ctr. for Mental Health*, 97 F. Supp. 3d 141, 181 (E.D.N.Y. 2015) ("'Although credibility assessments are improper on a motion for summary judgment,' a court may be justified in dismissing a claim when the 'plaintiff's version of the events is in such discord with the record evidence as to be wholly fanciful.'" (quoting *Pulliam v. Lilly*, No. 07-CV-1243, 2010 WL 935383, at *5 (E.D.N.Y. Mar. 11, 2010))).

Finally, the Second Circuit has instructed that when a court considers a motion for summary judgment, "special solicitude" should be afforded a pro se litigant, *see Graham,* 848 F.2d at 344; *accord Mercado v. Div. of N.Y. State Police,* No. 96-CV-235, 2001 WL 563741, at *7 (S.D.N.Y. May 24, 2001) (same), and a court should construe "the submissions of a pro se litigant . . . liberally" and interpret them "to raise the strongest arguments that they suggest," *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (italics and quotation marks omitted). Further, "the failure to oppose a motion for summary judgment alone does not justify the granting of summary judgment." *Vt. Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004); *see also Jackson v. Fed. Express*, 766 F.3d 189, 196 (2d Cir. 2014) (explaining that "an examination of the legal validity of an entry of summary judgment should . . . be[] made in light of the opposing party's pro se status" (italics omitted)). Nonetheless, "proceeding pro se does not otherwise relieve a litigant of the usual requirements of summary judgment, and a pro se party's bald assertions unsupported by evidence . . . are insufficient to overcome a motion for summary judgment." *Houston*, 27 F. Supp. 3d at 351 (italics and

quotation marks omitted); *see also Flores v. City of New York*, No. 15-CV-2903, 2017 WL 3263147, at *2 (S.D.N.Y. July 31, 2017) (same).

    B.  Analysis

        1.  False Arrest

Plaintiff alleges that he was "falsely confined and imprisoned . . . for a period of [forty-eight] days with[]out cause or legal reasoning."  (Compl. 4.)  During his deposition, Plaintiff clarified that his false arrest and imprisonment claim is based on his detention from January 6, 2017 until February 23, 2017, when the grand jury dismissed the Criminal Possession of a Weapon in the Second Degree charge against him.  (*See* Pl. Dep. Tr. at 48:5–20.)[12]  In support of their Motion, the Officer Defendants argue, among other things, that they are entitled to summary judgment on this claim because there was probable cause to arrest Plaintiff on January 6, 2017 and to detain him thereafter, given that: (1) Plaintiff was initially arrested for Theft of Services in connection with the Lyft ride earlier on January 6, 2017, and he subsequently pled guilty to that charge ; and (2) an unclaimed firearm was discovered during the course of an inventory search of the Jetta.  (*See* Defs.' Mem. 10–15.)  The Officer Defendants also assert that they are entitled to qualified immunity on Plaintiff's false arrest claim.  (*See id.* at 17–20.)

"A § 1983 claim for false arrest, resting on the Fourth Amendment right of an individual to be free from unreasonable seizures, including arrest without probable cause is substantially the same as a claim for false arrest under New York law."  *Beach v. City of New York*, No. 21-CV-

---

[12] Because "[a] municipality may not be held liable under [§] 1983 on a respondeat superior theory of liability for its employees' alleged constitutional violations[,]" *Alicea v. Ganim*, No. 23-CV-1018, 2024 WL 1705038, at *11 n.8 (D. Conn. Apr. 20, 2024) (italics omitted) (quoting *Moskowitz v. Great Neck Union Free Sch. Dist.*, No. 20-CV-1659, 2021 WL 4268138, at *10 (E.D.N.Y. Aug. 4, 2021)), the Court construes Plaintiff's false arrest claim as being raised against the Officer Defendants, but not the City.

6737, 2023 WL 5576398, at *3 (S.D.N.Y. Aug. 28, 2023) (alterations adopted) (quoting *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996)).[13]  "To state a claim for false arrest under New York law, a plaintiff must show that: (1) the defendant intentionally confined the plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement, and (4) the confinement was not otherwise justified."  *Roman v. City of Mount Vernon*, No. 21-CV-2214, 2023 WL 8719968, at *7 (S.D.N.Y. Dec. 18, 2023) (quotation marks omitted); *see also Hussey v. Rosen*, No. 23-CV-4378, 2023 WL 5611647, at *3 (S.D.N.Y. Aug. 28, 2023) (same).

"The existence of probable cause to arrest constitutes justification and is a complete defense to an action for false arrest under § 1983."  *Dillon v. Rosen*, No. 22-CV-7035, 2022 WL 4538397, at *3 (S.D.N.Y. Sept. 28, 2022) (alteration adopted) (quoting *Jenkins v. City of New York*, 478 F.3d 76, 84 (2d Cir. 2007)); *see also Beach*, 2023 WL 5576398, at *3 ("The existence of probable cause to arrest is a defense to a false arrest claim.").  Accordingly, "a claim for false arrest will not lie so long as the arresting officer had probable cause to arrest the plaintiff for some crime."  *Jaegly v. Couch*, 439 F.3d 149, 150 (2d Cir. 2006); *see also Delgado v. City of New York*, No. 19-CV-6320, 2023 WL 6390134, at *8 (S.D.N.Y. Oct. 2, 2023) ("Because probable cause to arrest constitutes justification, there can be no claim for false arrest where the arresting officer had probable cause to arrest the plaintiff." (quoting *Escalera v. Lunn*, 361 F.3d 737, 743 (2d Cir. 2004))).

---

[13] Additionally, "[u]nder New York law, false arrest and false imprisonment are one and the same, and the elements for both are the same as for a false arrest claim under § 1983."  *Hershey v. Goldstein*, 938 F. Supp. 2d 491, 515 (S.D.N.Y. 2013); *see also Posr v. Doherty*, 944 F.2d 91, 96–97 (2d Cir. 1991) (same); *Wright v. Rutulante*, No. 16-CV-10068, 2018 WL 1578172, at *4 (S.D.N.Y. Mar. 27, 2018) (same).  Accordingly, to the degree that Plaintiff brings distinct false arrest and false imprisonment claims, the Court's analysis herein applies to them both equally.

"Probable cause is 'a fluid concept not readily, or even usefully, reduced to a neat set of legal rules.  While probable cause requires more than a mere suspicion of wrongdoing, its focus is on probabilities, not hard certainties.'"  *King v. Nesto*, No. 19-CV-1466, 2023 WL 2456701, at *5 (D. Conn. Mar. 10, 2023) (alterations adopted) (quoting *Walczyk v. Rio*, 496 F.3d 139, 156 (2d Cir. 2007)).  "Thus, according to the Supreme Court, when courts review a situation frozen in ink and perform ex post facto probable cause analyses with the benefit of near-unlimited time, they are to think about 'the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.'"  *Barkai v. Nuendorf*, No. 21-CV-4060, 2023 WL 2691712, at *18 (S.D.N.Y. Mar. 29, 2023) (quoting *Illinois v. Gates*, 462 U.S. 213, 241 (1983)).

Notably, "probable cause exists even where it is based upon mistaken information, so long as the arresting officer was reasonable in relying on that information."  *Aurecchione v. Falco*, No. 22-CV-4538, 2023 WL 6255529, at *10 (S.D.N.Y. Sept. 25, 2023) (quoting *Bernard v. United States*, 25 F.3d 98, 103 (2d Cir. 1994)).  Once a government official has a reasonable basis to believe that there is probable cause to arrest, the official "is not required to explore and eliminate every theoretically plausible claim of innocence before making an arrest."  *Garcia v. Does*, 779 F.3d 84, 93 (2d Cir. 2015) (quotation marks and citation omitted).  "In sum, probable cause does not demand any showing that a good-faith belief be 'correct or [even] more likely true than false.'  It requires only such facts as make wrongdoing or the discovery of evidence thereof probable."  *Walczyk*, 496 F.3d at 157 (quoting *Texas v. Brown*, 460 U.S. 730, 742 (1983)).

"Generally speaking, officers have probable cause to arrest when they have 'reasonably trustworthy information as to facts and circumstances that are sufficient to warrant a person of

reasonable caution in the belief that an offense has been committed by the person to be arrested.'" *Taranto v. Putnam County*, No. 21-CV-2455, 2023 WL 6318280, at *8 (S.D.N.Y. Sept. 28, 2023) (quoting *Ackerson v. City of White Plains*, 702 F.3d 15, 19 (2d Cir. 2012)).  As the Second Circuit has explained:

> To determine the existence of probable cause, a court considers the totality of the circumstances, based on a full sense of the evidence that led the officer to believe that there was probable cause to make an arrest.  The court considers those facts available to the officer at the time of the arrest and immediately before it.  The significance of each of these factors may be enhanced or diminished by surrounding circumstances.

*Guan v. City of New York*, 37 F.4th 797, 804 (2d Cir. 2022) (quotation marks and citations omitted).  Additionally, "when making a probable cause determination, police officers are entitled to rely on the allegations of fellow police officers."  *United States v. Barnes*, No. 22-CR-109, 2022 WL 12399322, at *3 (S.D.N.Y. Oct. 21, 2022) (alteration adopted) (quoting *Panetta v. Crowley*, 460 F.3d 388, 395 (2d Cir. 2006)).

"The burden of establishing the absence of probable cause rests on the plaintiff," and "[t]he question of whether or not probable cause existed may be determinable as a matter of law if there is no dispute as to the pertinent events and the knowledge of the officers."  *Sethi v. Nassau County*, No. 11-CV-6380, 2014 WL 2526620, at *4 (E.D.N.Y. June 3, 2014) (citations omitted); *see also Nickey v. City of New York*, No. 11-CV-3207, 2013 WL 5447510, at *5 (E.D.N.Y. Sept. 27, 2013) ("[W]hen the facts material to a probable cause determination are undisputed, the matter is a question of law properly decided by the [c]ourt.").

Finally, "[e]ven if probable cause to arrest is ultimately found not to have existed, an arresting officer will still be entitled to qualified immunity from a suit for damages if he can establish that there was 'arguable probable cause' to arrest.  *Escalera*, 361 F.3d at 743. "Arguable probable cause exists if either (a) it was objectively reasonable for the officer to

believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met." *Walczyk*, 496 F.3d at 163 (citation and quotation marks omitted); *see also Amore v. Novarro*, 624 F.3d 522, 536 (2d Cir. 2010) (same). Accordingly, "the analytically distinct test for qualified immunity is more favorable to the officers than the one for probable cause; arguable probable cause will suffice to confer qualified immunity for the arrest." *Escalera*, 361 F.3d at 742 (quotation marks omitted). "This forgiving standard protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Provost v. City of Newburgh*, 262 F.3d 146, 160 (2d Cir. 2001) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). To deny a motion for summary judgment on qualified immunity grounds, a court must find that the officer's judgment was "so flawed that no reasonable officer would have made a similar choice." *Id.* (citation omitted).

Applying the foregoing principles here, the Court concludes that there is no genuine dispute as to the facts giving rise to the Officer Defendants' probable cause to arrest Plaintiff on January 6, 2017. In particular, the Officer Defendants had probable cause to arrest Plaintiff on a Theft of Services charge pursuant to N.Y. Penal Law § 165.15(3). As noted above, *see supra* Section I.A.1.a, a Lyft driver approached non-party MVPD officers, including Griffin, on January 6, 2017, complaining that three men exited his car without paying for their ride. (*See* Defs.' 56.1 ¶ 5; *see also* Acquisto Decl. Ex. C ¶ 5; *id.* Ex. D at 1.) Based on the driver's allegation that the three men went into a local store after exiting his car, (*see* Defs.' 56.1 ¶ 6; *see also* Acquisto Decl. Ex. C ¶ 6; *id.* Ex. D at 1), Griffin and King later went to that store to speak with the manager, (*see* Defs.' 56.1 ¶ 7.) There, they were permitted to review the store's surveillance footage from earlier that day, at which point Griffin saw that Plaintiff—whom he recognized—and two other men had entered the store at around 10:58 a.m. and then exited the

store at around 10:59 a.m. (*See id.* ¶¶ 7–8; *see also* Acquisto Decl. Ex. C ¶¶ 6–8; *id.* Ex. D at 1.) In addition, the Lyft driver was separately shown a photo array that included a photograph of Plaintiff among photographs of five other individuals, and, when prompted to select anyone involved in the incident earlier that day, the driver chose the photograph of Plaintiff. (*See* Defs.' 56.1 ¶ 9; *see also* Acquisto Decl. Ex. E at 1.) During the car stop later on January 6, 2017, Puff and King both recognized Plaintiff, and knew that he was wanted in connection with the Lyft driver's allegations. (*See* Puff Aff. ¶¶ 11–12; King Aff. ¶¶ 6–7.) Thus, they placed Plaintiff under arrest for his alleged involvement in the Lyft incident. (*See* Acquisto Decl. Ex. G at 2; *see also id.* Ex. I at 1 (Detective's Supplemental Report prepared by King) (Dkt. No. 49-9).) Ultimately, Plaintiff pled guilty to one count of Theft of Services in connection with the Lyft incident on February 7, 2017. (*See* Acquisto Decl. Ex. J at 1.)

In light of the Lyft drivers' statement and corresponding identification of Plaintiff in the photo array presented to him—as well as the fact that Griffin had identified Plaintiff in the store's surveillance video, *see Barnes*, 2022 WL 12399322, at *3 (explaining that "when making a probable cause determination, police officers are entitled to rely on the allegations of fellow police officers" (alteration adopted) (citation omitted))—Defendants were plainly presented with "circumstances . . . sufficient to warrant a person of reasonable caution in the belief that" Plaintiff had committed Theft of Services under N.Y. Penal Law § 165.15(3), *Taranto*, 2023 WL 6318280, at *8 (quoting *Ackerson*, 702 F.3d at 19); *see also* N.Y. Penal Law § 165.15(3) ("A person is guilty of theft of services when: [w]ith intent to obtain . . . taxi or any other public transportation service without payment of the lawful charge therefor, or to avoid payment of the lawful charge for such transportation service which has been rendered to him, he obtains or attempts to obtain such service or avoids or attempts to avoid payment therefor by force,

intimidation, stealth, deception or mechanical tampering, or by unjustifiable failure or refusal to pay[.]").  Simply put, Plaintiff has not met his "burden of establishing the absence of probable cause" here.  *Sethi*, 2014 WL 2526620, at *4.

Moreover, "[a] conviction for the offense which precipitated [an] arrest is definitive evidence of probable cause."  *Boykins v. Lopez*, No. 21-CV-2831, 2022 WL 2307684, at *7 (S.D.N.Y. June 27, 2022) (quoting *Jean-Laurent v. Cornelius*, No. 15-CV-2217, 2017 WL 933100, at *4 (S.D.N.Y. Mar. 8, 2017)); *see also Clark v. City of New York*, No. 16-CV-7744, 2018 WL 4372671, at *4 (S.D.N.Y. Sept. 13, 2018) ("A conviction of the crime for which an[] individual is arrested bars recovery for false arrest or malicious prosecution."); *Hope v. City of New York*, No. 08-CV-5022, 2010 WL 331678, at *2 (E.D.N.Y. Jan. 22, 2010) ("A valid prosecution resulting in conviction is conclusive evidence that probable cause existed for an arrest[.]").  "The same is true if the conviction is obtained through a guilty plea."  *Croft v. Greenhope Servs. for Women, Inc.*, No. 13-CV-2996, 2013 WL 6642677, at *5 (S.D.N.Y. Dec. 17, 2013) (citing *Maietta v. Artuz*, 84 F.3d 100, 102 n.1 (2d Cir. 1996)); *see also Domeneck v. City of New York*, No. 18-CV-7419, 2019 WL 5727409, at *7 (S.D.N.Y. Nov. 5, 2019) ("[A] guilty plea is sufficient to demonstrate that there was probable cause to arrest, and precludes a false arrest claim under [§] 1983.") (collecting cases).  Because it is undisputed that Plaintiff pled guilty to the Theft of Services charge, the Court has little trouble in determining that the Officer Defendants are entitled to summary judgment on Plaintiff's false arrest claim.[14]

---

[14] During his deposition, Plaintiff testified that he was not, in fact, guilty of the Theft of Services charge, but he had pled guilty anyway because he "just didn't feel like going through it" because he "thought [he] was going to[] . . . end up" facing a more serious charge.  (Pl.'s Dep. Tr. at 16:6–14.)  However, Plaintiff also affirmed during his deposition that he had pleaded guilty to Theft of Services before a judge while under oath.  (*Id.* at 16:15–20.)  In any event, "[t]he validity of an arrest does not depend upon a finding that the arrested person is guilty."  *Ross v. Guy*, No. 18-CV-1340, 2022 WL 768196, at *7 (E.D.N.Y. Mar. 14, 2022).

To be sure, Plaintiff contends that he was arrested on January 6, 2017 for the Criminal Possession of a Weapon in the Second Degree charge, rather than the Theft of Services charge. (Pl.'s Dep. Tr. at 15:4–14; *see also* Compl. 4.)  However, to the degree that Plaintiff bases this contention on what he was told on or around January 6, 2017, the Court emphasizes that the "law [in the Second Circuit] is clear that probable cause for *any* offense, even one not identified by the arresting officer, will defeat a claim for false arrest."  *Schramm v. City of New York*, No. 16-CV-553, 2019 WL 6791462, at *4 n.6 (S.D.N.Y. Dec. 11, 2019) (emphasis in original); *see also Figueroa v. Mazza*, 825 F.3d 89, 99 (2d Cir. 2016) ("The existence of probable cause to arrest—even for a crime other than the one identified by the arresting officer—will defeat a claim of false arrest under the Fourth Amendment." (citing *Devenpeck v. Alford*, 543 U.S. 146, 152–54 (2004))).

In sum, because the undisputed evidence shows that Defendants had probable cause to arrest Plaintiff, the Court grants summary judgment their favor on Plaintiff's false arrest and false imprisonment claim.[15]

## 2.  Malicious Prosecution

Plaintiff also asserts that he was subjected to malicious prosecution in violation of his constitutional rights.  (Compl. 4.)[16]  In support of their Motion, the Officer Defendants argue that

---

[15] For substantially the same reasons, the Court likewise concludes that "it was objectively reasonable for [Defendants] to believe that probable cause existed" to arrest Plaintiff on January 6, 2017, or, at the very least, that "officers of reasonable competence could disagree on whether the probable cause test was met."  *See Walczyk*, 496 F.3d at 163.  The Officer Defendants therefore had "arguable probable cause" to arrest Plaintiff, and, thus, are also entitled to qualified immunity with respect to Plaintiff's false arrest claim.

[16] As with his false arrest claim, the Court construes Plaintiff's malicious prosecution claim as being raised against the Officer Defendants only, and not the City.  *See Alicea*, 2024 WL 1705038, at *11 n.8 (explaining that municipalities "may not be held liable under [§] 1983

Plaintiff's malicious prosecution claim must fail because they had probable cause to prosecute

him for Criminal Possession of a Weapon in the Second Degree.  (*See* Defs.' Mem. 16–17.)  The

Officer Defendants also contend that they are entitled to qualified immunity on this claim.  (*See*

*id.* at 17–20.)

"While the tort of malicious prosecution protects against the consequences of wrongful

prosecution, public policy favors bringing criminals to justice, and accusers must be allowed

room for benign misjudgments.  The law therefore places a heavy burden on malicious

prosecution plaintiffs[.]"  *Smith-Hunter v. Harvey*, 734 N.E.2d 750, 752 (N.Y. 2000); *see also*

*Rothstein v. Carriere*, 373 F.3d 275, 282 (2d Cir. 2004) (same).  "In order to prevail on a § 1983

claim against a state actor for malicious prosecution, a plaintiff must show a violation of his

rights under the Fourth Amendment and must establish the elements of a malicious prosecution

claim under state law."  *Ames v. City of New York*, No. 20-CV-11081, 2023 WL 2647642, at *5

(S.D.N.Y. Mar. 27, 2023) (quoting *Manganiello v. City of New York*, 612 F.3d 149, 160–61 (2d

Cir. 2010)).  "Under New York law, '[t]o prevail on a claim of malicious prosecution, four

elements must be shown: [i] the defendant initiated a prosecution against plaintiff, [ii] without

probable cause to believe the proceeding can succeed, [iii] the proceeding was begun with malice

and, [iv] the matter terminated in plaintiff's favor.'"  *Da Mata v. City of New York*, No. 21-CV-

155, 2023 WL 112449, at *11 (S.D.N.Y. Jan. 5, 2023) (alterations in original) (quoting *Ricciuti

v. N.Y.C. Transit Auth.*, 124 F.3d 123, 130 (2d Cir. 1997)).  Additionally, "[f]or a malicious

prosecution claim under [§] 1983, a plaintiff also must demonstrate a 'sufficient post-

---

on a respondeat superior theory of liability for [their] employees' alleged constitutional
violations" (citation omitted)).

arraignment liberty restraint.'" *Kee v. City of New York*, 12 F.4th 150, 162 (2d Cir. 2021)

(quoting *Rohman v. N.Y.C. Transit Auth.*, 215 F.3d 208, 215 (2d Cir. 2000)).

"Probable cause is a complete defense to malicious prosecution." *Rutherford v. City of*

*Mount Vernon*, — F. Supp. 3d —, 2023 WL 6395375, at *18 (S.D.N.Y. Sept. 29, 2023)

(quotation marks omitted); *see also Manganiello*, 612 F.3d at 161–62 (same); *V.A. v. City of New*

*York*, No. 22-CV-773, 2023 WL 6254790, at *8 (S.D.N.Y. Sept. 26, 2023) (same). "In the

context of a malicious prosecution claim, probable cause under New York law is 'the knowledge

of facts, actual or apparent, strong enough to justify a reasonable man in the belief that he has

lawful grounds for prosecuting the defendant in the manner complained of.'" *Kurtz v. Hansell*,

664 F. Supp. 3d 438, 452 (S.D.N.Y. 2023) (quoting *Rounseville v. Zahl*, 13 F.3d 625, 629 (2d

Cir. 1994)); *see also Stukes v. City of New York*, No. 13-CV-6166, 2015 WL 1246542, at *5

(E.D.N.Y. Mar. 17, 2015) ("Probable cause, in the context of a malicious prosecution claim,

'consists of such facts and circumstances as would lead a reasonably prudent person in like

circumstances to believe plaintiff guilty.'" (quoting *Colon v. City of New York*, 455 N.E.2d 1248,

1250 (1983))). "The Second Circuit has clarified that 'probable cause' for a malicious

prosecution claim means 'probable cause to believe that [the prosecution] could succeed[.]'"

*Delanuez v. City of Yonkers*, No. 20-CV-4476, 2022 WL 16540682, at *8 (S.D.N.Y. Oct. 28,

2022) (alterations in original) (quoting *Boyd v. City of New York*, 336 F.3d 72, 76 (2d Cir.

2003))). When presented with a malicious prosecution claim, courts "consider[] the 'facts

known or reasonably believed at the time the prosecution was initiated[.]'" *Soto v. City of New*

*York*, 132 F. Supp. 3d 424, 452 (E.D.N.Y. 2015) (quoting *Castro v. County of Nassau*, 739 F.

Supp. 2d 153, 169 (E.D.N.Y. 2010)). "Notably, the probable cause standard in the malicious

prosecution context is slightly higher than the standard for false arrest cases." *Finnegan v.*

*Berben*, No. 20-CV-10231, 2024 WL 1242996, at *18 (S.D.N.Y. Mar. 22, 2024) (alteration

adopted) (quotation marks omitted); *accord Stansbury v. Wertman*, 721 F.3d 84, 95 (2d Cir.

2013).

As in the false arrest context, given that probable cause it a complete defense to malicious

prosecution claims, "the standard of qualified immunity [i]s one of arguable probable cause."

*Hutchins v. Solomon*, No. 16-CV-10029, 2018 WL 4757970, at *21 (S.D.N.Y. Sept. 29, 2018)

(quotation marks omitted) (quoting *Betts v. Shearman*, No. 12-CV-3195, 2013 WL 311124, at *4

(S.D.N.Y. Jan. 24, 2013)). "Arguable probable cause exists when a reasonable police officer in

the same circumstances and possessing the same knowledge as the officer in question *could* have

reasonably believed that probable cause existed in the light of well-established law." *Id.*

(emphasis in original) (quoting *Cerrone v. Brown*, 246 F.3d 194, 202–03 (2d Cir. 2001)). Again,

"an officer is entitled to qualified immunity if (1) 'it was objectively reasonable for the officer to

believe that probable cause existed,' or (2) 'officers of reasonable competence could disagree on

whether the probable cause test was met.'" *Id.* (quoting *Golino v. City of New Haven*, 950 F.2d

864, 870 (2d Cir. 1991)); *see also Betts*, 2013 WL 311124, at *4 (same).

As noted, the Officer Defendants' argue that they had probable cause to prosecute

Plaintiff. (*See* Defs.' Mem. 16–17.) The Court agrees and concludes that the undisputed "facts

and circumstances" surrounding the relevant events on January 6, 2017 "would lead a reasonably

prudent person" in the Officer Defendants' position to believe that Plaintiff was guilty of

Criminal Possession of a Weapon in the Second Degree. *See Stukes*, 2015 WL 1246542, at *5

(citation omitted).

Under New York law, "[a] person is guilty of criminal possession of a weapon in the

second degree when: . . . such person possesses any loaded firearm." N.Y. Penal Law

§ 265.03(3).  Further, New York's so-called "Automobile Presumption" provides that "[t]he presence in an automobile, other than a stolen one or a public omnibus, of any firearm[] . . . is presumptive evidence of its possession by all persons occupying such automobile at the time such weapon, instrument or appliance is found[.]"  N.Y. Penal Law § 265.15(3); *see also Lewis v. Westchester County*, No. 20-CV-9017, 2022 WL 1448676, at *1 (S.D.N.Y. May 9, 2022) (explaining that the Automobile Presumption "provides that a weapon found in a vehicle, but not on the 'person' of any of its occupants, can be presumed to be possessed by all the occupants"), *reconsideration denied*, 2023 WL 5397291 (S.D.N.Y. Aug. 22, 2023).[17]

Here, upon approaching the Jetta on January 6, 2017, Puff observed the vehicle's occupants making furtive movements with their hands and acting nervously.  (Puff Aff. ¶ 10; *see also* Acquisto Decl. Ex. G at 1.)  Later, while conducting an inventory search of the Jetta, Griffin saw a bulge in the rear pocket of the Jetta's front passenger seat that resembled a handgun.  (*See* Acquisto Decl. Ex. C ¶¶ 9–10; *see also* Defs.' 56.1 ¶ 21; Acquisto Decl. Ex. K at 1.)  Then, after obtaining a search warrant, MVPD officers recovered a loaded firearm from the Jetta, (*see* Defs.' 56.1 ¶ 22; Acquisto Decl. Ex. C ¶ 11; *id.* Ex. G at 2–3; *id.* Ex. K at 1; *id.* Ex. L at 1), but none of the Jetta's occupants claimed ownership of that firearm, (*see* Defs.' 56.1 ¶ 23; *see also* Puff Aff. ¶ 16; King Aff. ¶ 11).[18]  Indeed, it appears from the record that no one claimed ownership of the

---

[17] The Automobile Presumption does *not* apply if the weapon at issue: (1) "is found upon the person of one of the occupants" of the vehicle; (2) "in an automobile which is being operated for hire by a duly licensed driver in the due, lawful[,] and proper pursuit of his or her trade, [in which case the] presumption shall not apply to the driver"; and (3) "is a pistol or revolver and one of the occupants, not present under duress, has in his or her possession a valid license to have and carry concealed the same."  N.Y. Penal Law § 265.15(3).  However, there are no facts in the record that implicate these statutory exceptions.

[18] Although the Complaint alleges that the Officer Defendants searched the Jetta and "recovered no contraband[,]" (Compl. 4), Plaintiff has adduced no evidence rebutting the Officer Defendants' evidence that a loaded firearm was ultimately recovered from the Jetta.  Indeed,

firearm until November 17, 2017, when another individual arrested in the Jetta pled guilty to Criminal Possession of a Weapon in the Second Degree. (*See* Defs.' 56.1 ¶ 34.) As a result, each occupant was charged with Criminal Possession of a Weapon in the Second Degree on the basis that they were found to be in a vehicle that also contained an unclaimed, loaded firearm. (Acquisto Decl. Ex. M at 1.) And, importantly, there is unrebutted evidence in the record that the Officer Defendants received no information that would exonerate Plaintiff after signing a felony complaint against him. (*See* Puff Aff. ¶ 19; King Aff. ¶ 13.)

On this undisputed record, and in light of the Automobile Presumption, the Officer Defendants had probable cause to prosecute Plaintiff for Criminal Possession of a Weapon in the Second Degree. *See Gibson v. Grant*, No. 20-CV-4421, 2024 WL 1077892, at *16–17 (E.D.N.Y. Jan. 31, 2024) (recommending—where the plaintiff brought a malicious prosecution claim stemming from a Criminal Possession of a Weapon in the Second Degree charge—that the court grant the defendants' summary judgment motion because, among other reasons, the defendants could presume the plaintiff's possession of an assault rifle recovered in a vehicle's trunk pursuant to the Automobile Presumption), *report and recommendation adopted*, 2024 WL 1072566 (E.D.N.Y. Mar. 11, 2024); *see also Lewis*, 2022 WL 1448676, at *5 (denying the plaintiff's motion to amend his complaint to add a malicious prosecution claim arising from a Criminal Possession of a Weapon in the Second Degree charge where "there [was] no allegation that any of the occupants of the vehicle admitted to owning the firearm [recovered therein] and each occupant [could] be presumed to have possessed the firearm under the Automobile

---

Plaintiff undermined his own allegation when he testified at his deposition that he had seen MVPD officers "with . . . lights in the backseat, so [he] just assumed that they were searching the [Jetta]." (Pl.'s Dep. Tr. at 28:20–29:2.; *see also id.* at 31:23–32:11 (Plaintiff deposition testimony reiterating that he had "seen [MVPD officers] in the backseat of the [Jetta] with the lights on and[] . . . assumed that they were searching the car.").)

Presumption," and noting that "[the] plaintiff fail[ed] to offer facts plausibly showing the probable cause that existed at the time of plaintiff's *arrest* for criminal possession of a weapon dissipated by the time of the *prosecution* of those charges" (emphases in original)); *cf. Williams v. City of New York*, No. 10-CV-9594, 2012 WL 547508, at *7 (S.D.N.Y. Feb. 17, 2012) ("[T]he distinction between probable cause to arrest and to prosecute only assumes importance when new information comes to light in the hours or days between the arrest and prosecution."); *Kilburn v. Village of Saranac Lake*, 413 F. App'x 362, 364 (2d Cir. 2011) (summary order) ("[P]robable cause to arrest is generally construed as probable cause to prosecute as well." (citing *Williams v. Town of Greenburgh*, 535 F.3d 71, 79 (2d Cir.2008))).[19]

In short, based on the totality of these undisputed facts and circumstances, the Court concludes that a reasonable person in Defendant's position would be "justif[ied] . . . in the belief

---

[19] Although it is not entirely clear from the record, Plaintiff appears to suggest that MVPD officers may have planted the firearm in the Jetta, or otherwise fabricated its recovery. (*See* Compl. 4 ("[D]efendants searched the [Jetta] . . . and recovered no contraband. However, [D]efendant[s] transported [the Jetta] to the [MVPD] and alle[]gedly discovered a firearm."); Pl.'s Dep. Tr. at 31:23–32:11 (Plaintiff's testimony that he believed "something funny [was] going on" when he learned that a firearm was recovered from the Jetta, given that he had "assumed" the car had previously been searched at the time of his arrest).) However, "Plaintiff[] cannot withstand summary judgment by making unsubstantiated, convenient claims—[in essence], that someone must have planted the [firearm] . . . ." *Apostol v. City of New York*, No. 11-CV-3851, 2014 WL 1271201, at *6 (E.D.N.Y. Mar. 26, 2014), *aff'd*, 607 F. App'x 105, 107 (2d Cir. 2015) (summary order); *see also Gutierrez v. New York*, No. 18-CV-3621, 2021 WL 681238, at *18 (E.D.N.Y. Feb. 22, 2021) ("Although plaintiffs can generally rely on their own testimony to demonstrate a genuine dispute of material fact, plaintiff offers no evidence in support of his claims that the evidence was planted, which alone are insufficient to withstand summary judgment for false evidence allegations." (citation and quotation marks omitted)); *Isaac v. City of New York*, No. 16-CV-4729, 2020 WL 1694300, at *9 (E.D.N.Y. Apr. 6, 2020) (granting summary judgment to defendants where "[the p]laintiff claim[ed] that the testimony of four witnesses and [the] defendant . . . was false, but offer[ed] no evidence in support, other than his own testimony"); *Carlisle v. City of New York*, No. 05-CV-6825, 2007 WL 998729, at *3 (S.D.N.Y. Apr. 2, 2007) ("[P]laintiff's unsupported, conclusory allegation that someone must have planted the evidence because there is no other way it could have gotten [there] is not sufficient to defeat a motion for summary judgment." (alterations in original)).

that [they] ha[d] lawful grounds for prosecuting" Plaintiff for Criminal Possession of a Weapon

in the Second Degree.  *See Kurtz*, 664 F. Supp. 3d at 452 (quoting *Rounseville*, 13 F.3d at 629);

*see also Delanuez*, 2022 WL 16540682, at *8 (explaining that "probable cause for a malicious

prosecution claim means probable cause to believe that the prosecution [against the plaintiff]

could succeed" (alterations adopted and quotation marks omitted) (quoting *Boyd*, 336 F.3d at

76)).  Thus, the Court grants summary judgment in the Officer Defendants' favor on Plaintiff's

malicious prosecution claim.[20]

### 3.  Municipal Liability

In addition to the foregoing, Plaintiff brings a claim for municipal liability, alleging that

the City "is deliberately indifferent to the rights of [its] residents . . . by failing to train and

supervise its [p]olice officers as to probable cause requirement[] prior to making an arrest."

(Compl. 4–5.)  Defendants argue that they are entitled to summary judgment on this claim

because Plaintiff has failed to establish that: (1) there is a genuine issue of material fact as to any

underlying constitutional violation, (*see* Defs.' Mem. 20); (2) the City had any specific training

deficiencies relating to probable cause requirements, (*see id.* at 22–23); and (3) the City was

deliberately indifferent to any asserted pattern of constitutional violations relating to probable

cause or any lack thereof, (*see id.* at 23–24).

"To state a claim under [§ 1983], the plaintiff must show that a defendant, acting under

color of state law, deprived him of a federal constitutional or statutory right."  *Sykes v. Bank of*

---

[20] In light of its determination as to the Officer Defendants' probable cause to prosecute
Plaintiff, the Court necessarily concludes that "it was objectively reasonable for the [Officer
Defendants] to believe that probable cause existed," or, at the very least, that "officers of
reasonable competence could disagree on whether the probable cause test was met."  *See
Hutchins*, 2018 WL 4757970, at *21.  The Officer Defendants therefore had "arguable probable
cause" to prosecute Plaintiff, and are, thus, entitled to qualified immunity with respect to
Plaintiff's malicious prosecution claim.

*Am.*, 723 F.3d 399, 405–06 (2d Cir. 2013). "Congress did not intend municipalities to be held liable [under § 1983] unless action pursuant to official municipal policy of some nature caused a constitutional tort." *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 691 (1978). Thus, "to prevail on a claim against a municipality under section 1983 based on acts of a public official, a plaintiff is required to prove: (1) actions taken under color of law; (2) deprivation of a constitutional or statutory right; (3) causation; (4) damages; and (5) that an official policy of the municipality caused the constitutional injury." *Roe v. City of Waterbury*, 542 F.3d 31, 36 (2d Cir. 2008).

The fifth element reflects the notion that "a municipality may not be held liable under § 1983 solely because it employs a tortfeasor." *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 403 (1997); *see also Newton v. City of New York*, 566 F. Supp. 2d 256, 270 (S.D.N.Y. 2008) ("As subsequently reaffirmed and explained by the Supreme Court, municipalities may only be held liable when the municipality itself deprives an individual of a constitutional right."). In other words, a municipality may not be liable under Section 1983 "by application of the doctrine of respondeat superior." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 478 (1986) (italics omitted); *see also Vassallo v. Lando*, 591 F. Supp. 2d 172, 201 (E.D.N.Y. 2008) (noting that "a municipal entity may only be held liable where the entity *itself* commits a wrong" (emphasis in original)). Instead, there must be a "direct causal link between a municipal policy or custom and the alleged constitutional deprivation." *City of Canton v. Harris*, 489 U.S. 378, 385 (1989); *see also City of St. Louis v. Praprotnik*, 485 U.S. 112, 122 (1988) ("[G]overnments should be held responsible when, and only when, their official policies cause their employees to violate another person's constitutional rights.").

Because the Court has determined that Plaintiff has failed to adduce sufficient evidence to raise a triable issue of fact as to an underlying constitutional violation, which is a necessary predicate to a *Monell* claim, the Court grants summary judgment to the Defendants on that claim. *See DeRaffele v. City of New Rochelle*, No. 15-CV-282, 2017 WL 2560008, at *6 (S.D.N.Y. June 13, 2017) ("It is well established that a *Monell* claim cannot lie in the absence of an underlying constitutional violation."); *see also Segal v. City of New York*, 459 F.3d 207, 219 (2d Cir. 2006) ("*Monell* does not provide a separate cause of action . . . ; it extends liability to a municipal organization where that organization's failure to train, or the policies or customs that it has sanctioned, led to an independent constitutional violation." (emphasis omitted)).

Moreover, Defendants are entitled to summary judgment on the merits in any event. Plaintiff bases his *Monell* claim exclusively on the City's alleged failure to train and supervise MVPD officers with respect to probable cause requirements. (*See* Compl. 4–5.) A failure to train constitutes a policy or custom that is actionable under § 1983 only where "in light of the duties assigned to specific officers or employees[,] the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers . . . can reasonably be said to have been deliberately indifferent to the need." *City of Canton*, 489 U.S. at 390. The Second Circuit has held that a finding of deliberate indifference requires: (1) "that a policymaker knows 'to a moral certainty' that her employees will confront a given situation"; (2) "that the situation either presents the employee with a difficult choice of the sort that training . . . will make less difficult or that there is a history of employees mishandling the situation"; and (3) "that the wrong choice by the . . . employee will frequently cause the deprivation of a citizen's constitutional rights." *Okin v. Vill. of Cornwall-On-Hudson Police Dep't*, 577 F.3d 415, 440 (2d Cir. 2009) (second alteration in original) (quoting *Walker v. City of*

*New York*, 974 F.2d 293, 297–98 (2d Cir. 1992)).  "A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Connick v. Thompson*, 563 U.S. 51, 61 (2011).

Similarly, "[t]o establish *Monell* liability premised on a failure to supervise, a plaintiff must plead that (1) there was a pattern of allegations of or complaints about, or a pattern of actual, similar unconstitutional activity, and (2) the municipality consistently failed to investigate those allegations." *Lopes v. Westchester County*, No. 18-CV-8205, 2020 WL 1445729, at *5 (S.D.N.Y. Mar. 25, 2020).  Alternatively, "a plaintiff may plead (1) that there was a pattern of actual similar constitutional violations and (2) the municipality consistently failed to discipline those involved." *Tieman v. City of Newburgh*, No. 13-CV-4178, 2015 WL 1379652, at *21 (S.D.N.Y. Mar. 26, 2015) (emphasis omitted).  To establish deliberate indifference for a failure to supervise and/or discipline claim, the plaintiff must show that "the need for more or better supervision to protect against constitutional violations was obvious," which may be established "through proof of repeated complaints of civil rights violations . . . if the complaints are followed by no meaningful attempt on the part of the municipality to investigate or to forestall further incidents." *Buari*, 530 F. Supp. 3d at 400 (quoting *Vann v. City of New York*, 72 F.3d 1040, 1049 (2d Cir. 1995)).

Here, the Court can identify no evidence in the record even remotely suggesting that MVPD officers were not sufficiently trained on the legal requirements for a finding of probable cause.  *See Wilson v. City of New York,* No. 15-CV-7368, 2018 WL 4636823, at *4 (S.D.N.Y. Sept. 26, 2018) (granting summary judgment on a failure to train claim where the plaintiff failed to identify "any particular deficiency [that] existed" with the training provided by the defendant); *Hanson v. New York City*, No. 15-CV-1447, 2018 WL 1513632, at *21 (E.D.N.Y. Mar. 27,

2018) (finding that "general references to . . . deficiencies in [a] patrol guide, inadequate disciplinary actions, and the absence of [trainings]" were "not sufficiently specific" to impose liability for failure to train (quotation marks omitted)); *cf. Okin*, 577 F.3d at 440–41 ("The plaintiff must offer evidence to support the conclusion that the training program was inadequate, not '[t]hat a particular officer may be unsatisfactorily trained' or that 'an otherwise sound program has occasionally been negligently administered,' and that a 'hypothetically well-trained officer' would have avoided the constitutional violation." (alteration in original) (quoting *City of Canton*, 489 U.S. at 390–91)).

As to any failure to supervise, Plaintiff testified during his deposition that, according to "a couple people" he was with "in the county jail[,]" "Antonini[] . . . [and] his group of detectives that they run around with[,] . . . [t]hey take [peoples'] keys, run inside their house[s], come back and charge them with more charges.  So that's where . . . I got [my *Monell* claim] from."  (Pl.'s Dep. Tr. at 50:6–19.)  However, this information is plainly hearsay, *see* Fed. R. Evid. 801(c) (defining hearsay as "a statement that: (1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement"), and "a party 'cannot rely on inadmissible hearsay in opposing a motion for summary judgment, absent a showing that admissible evidence will be available at trial.'"  *Jean-Gilles v. Rockland County*, No. 20-CV-1999, 2024 WL 1348791, at *4 n.5 (S.D.N.Y. Mar. 29, 2024) (quoting *Messinger v. JPMorgan Chase Bank, N.A.*, 126 F. Supp. 3d 376, 379 n.2 (S.D.N.Y. 2015)).  The Court can locate no admissible evidence in the record that supports Plaintiff's claim.  In any event, Plaintiff admitted that he did not know whether any of the people with whom he was incarcerated—whose testimony he relies upon in support of his *Monell* claim—were in fact guilty of the crimes they were charged with, nor could he gauge their

credibility.  (*See* Pl.'s Dep. Tr. at 50:21–51:11.)  Thus, Plaintiff has failed to put forth *any* admissible evidence creating a triable issue of fact as to whether there existed any pattern of actual unconstitutional activities similar to those Plaintiff alleges to which the City failed to respond.  *See Lopes*, 2020 WL 1445729, at *5; *Tieman*, 2015 WL 1379652, at *21; *see also Selvaggio v. Patterson*, 93 F. Supp. 3d 54, 78–80 (E.D.N.Y. 2015) (granting summary judgment in the defendants' favor on the plaintiff's failure-to-supervise claim, where the individual defendants' disciplinary records only revealed a single instance of an alleged civil rights violation like the one the plaintiff alleged she had suffered and where the plaintiff had "failed to come forward with evidence to suggest that the [defendant-c]ity did not meaningfully investigate the allegations [at issue]").

    In sum, the Court grants summary judgment in Defendants' favor on Plaintiff's *Monell* claim.[21]

### 4.  State Law Claims

    Finally, although it is unclear whether Plaintiff intends to press false arrest and malicious prosecution claims under New York state law, the Court agrees with the Officer Defendants that they are entitled to summary judgment on any such claims.  (*See* Defs.' Mem. 10–11, 16.)

_____

[21] In light of its holdings herein, the Court declines to reach Defendants' additional argument that Plaintiff has failed to adduce sufficient evidence to create a triable issue of fact as to Antonini's personal involvement in the constitutional deprivations that Plaintiff alleges.  (*See* Defs.' Mem. 24–25.)

    However, the Court notes that, although "[i]t is well settled . . . that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983," *Seward*, 2023 WL 6387180, at *17 (quoting *Sterling v. Akinyombo*, No. 20-CV-10804, 2022 WL 2657223, at *4 (S.D.N.Y. July 8, 2022)), there are factual issues that would preclude summary judgment on the basis of personal involvement.  Specifically, Plaintiff testified at his deposition that he "knew who [Antonini] was" because Antonini "patrol[led his] area of Mount Vernon[,]" and had "arrive[d] as backup" on the scene where he was arrested.  (Pl.'s Dep. Tr. 45:17–46:18.)

To start, there is no evidence in the record that Plaintiff filed any Notice of Claim, as required under state law, in connection with the events of January 6, 2017 that gave rise to this Action.  "Under New York General Municipal Law § 50-i(1)[(a)], a plaintiff cannot bring a state tort law claim against [a municipality] or any [of its] employee[s] unless, within 90 days from the date the claim arose, 'a notice of claim shall have been made and served upon the [municipality].'"  *Cruz v. City of New York*, 232 F. Supp. 3d 438, 448 (S.D.N.Y. 2017) (quoting N.Y. Gen. Mun. L. § 50-i(1)(a)).  In turn, § 50-e requires that "[i]n any case founded upon tort where a notice of claim is required by law as a condition precedent to the commencement of an action . . . the notice of claim shall comply with and be served in accordance with the provisions of this section within ninety days after the claim arises[.]"  N.Y. Gen. Mun. Law § 50-e(1)(a); *accord Da Mata*, 2023 WL 112449, at *17.  Importantly, New York's Notice of Claim requirement applies to false arrest and malicious prosecution claims.  *See, e.g.*, *Fishman v. City of New Rochelle*, No. 19-CV-265, 2021 WL 4925518, at *10 (S.D.N.Y. Oct. 19, 2021) ("State law claims for . . . false arrest[] and malicious prosecution . . . require a notice of claim to be filed.") (collecting cases); *see also Fincher v. County of Westchester*, 979 F. Supp. 989, 1002 (S.D.N.Y. 1997) ("The notice of claim requirements apply equally to state tort claims brought as pendent claims in a federal civil rights action.").  Further, New York's Notice of Claim requirements are to be "strictly construed."  *Destine v. City of New York*, No. 20-CV-82, 2021 WL 5868158, at *3 (S.D.N.Y. Dec. 10, 2021) (citing *Hardy v. NYC Health & Hosp. Corp.*, 164 F.3d 789, 793 (2d Cir. 1999)).

Plaintiff raises claims stemming from his arrest on January 6, 2017 and his resulting prosecution for Criminal Possession of a Weapon in the Second Degree.  (*See generally* Compl.; *see also* Pl. Dep. Tr. at 48:5–20.)  False arrest claims accrue under New York law "at the time

when [the] plaintiff is released from jail[,]" *Destine*, 2021 WL 5868158, at *3 (quoting *Singleton v. City of New York*, 632 F.2d 185, 191 (2d Cir. 1980)), and malicious prosecution claims accrue when "the charges against the plaintiff [are] dismissed[,]" *see Breton v. City of New York*, 404 F. Supp. 3d 799, 809 (S.D.N.Y. 2019) (citing, inter alia, *Ferrick v. City of New York*, 489 N.Y.S.2d 491, 492 (App. Div. 1985) (noting that a "claim for malicious prosecution could not accrue until after the [relevant] acquittal")).  Here, a grand jury voted to dismiss the Criminal Possession of a Weapon in the Second Degree charge on February 23, 2017, (Defs.' 56.1 ¶ 30), and Plaintiff does not appear to assert that his detention thereafter on a parole hold was unlawful, (*see* Pl.'s Dep. Tr. 39:15–40:13.)  Therefore, he should have filed a Notice of Claim by no later than May 24, 2017, but there is no allegation, much less any evidence in the record, that Plaintiff filed a Notice of Claim regarding his claims at *any* time.  Accordingly, summary judgment in Defendants' favor is appropriate on Plaintiff's state law claims.  *See Norman v. City of New York*, No. 20-CV-5560, 2022 WL 3354707, at *6 (S.D.N.Y. Aug. 12, 2022) ("Because [the p]laintiff's failure to file a timely notice of claim renders this Court without jurisdiction to hear his state law tort claims, summary judgment is awarded to the City[-d]efendants as to [their state law tort] claims."); *Barnett v. City of Yonkers*, No. 15-CV-4013, 2018 WL 4680026, at *13 (S.D.N.Y. Sept. 28, 2018) (granting the defendants' motion for summary judgment on certain of the pro se plaintiff's state law claims where "the period of time between the disposition of his criminal case . . . [was] longer than ninety days").

Separately, any state-law claims for false arrest and malicious prosecution independently fail on the merits.  As set forth above, Defendants had probable cause to arrest and prosecute Plaintiff, *see supra* Section II.B.1–2, and probable cause serves as a complete defense to false arrest and malicious prosecution claims in New York.  *See Triolo v. Nassau County*, 24 F.4th 98,

106 (2d Cir. 2022) ("Under . . . New York state law, probable cause is a complete defense to a false arrest claim." (citing, inter alia, *De Lourdes Torres v. Jones*, 47 N.E.3d 747, 760 (2016)); *see also Guillen v. City of New York*, No. 19-CV-11784, 2023 WL 2561574, at *13 (S.D.N.Y. Mar. 17, 2023) (explaining that the plaintiff's "state law malicious prosecution claim fail[ed] on the merits because[] . . . probable cause is a complete defense to a malicious prosecution claim in New York" (citing *Fortunato v. City of New York*, 882 N.Y.S.2d 195, 196 (App. Div. 2009)).

### III.  Conclusion

For the reasons stated above, Defendants' Motion for Summary Judgment is granted in its entirety.  The Clerk of Court is respectfully directed to terminate the pending Motion, (Dkt. No. 48), mail a copy of this Opinion & Order to Plaintiff at the address listed on the docket, enter judgment for Defendants, and close this case.

SO ORDERED.

Dated:    September 3, 2024
              White Plains, New York

_____
        KENNETH M. KARAS
     United States District Judge